```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 08-5770(DSD/JSM)
```

Marina Ramirez,

       Plaintiff,

v.                                          **FINDINGS OF FACT,
                                            CONCLUSIONS OF LAW, AND**
Hillary Rodham Clinton,                     **ORDER FOR JUDGMENT**
Secretary of State,

       Defendant.

    Anh Le Kremer, Esq., Elizabeth C. Kramer, Esq., Peter J. Schwingler, Esq. and Leonard, Street & Deinard, PA, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, counsel for plaintiff.

    Chad A. Blumenfield, Assistant U.S. Attorney, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415; Regan Hildebrand, U.S. Department of Justice, P.O. Box 868, Ben Franklin Station, Washington, D.C. 20044, counsel for defendant.

    Plaintiff Marina Ramirez brought this action on October 16, 2008,[1] against defendant United States Secretary of State Hillary Rodham Clinton seeking a declaratory judgment that she is a United States citizen entitled to a United States passport. After discovery and pretrial proceedings, including a motion for summary judgment by defendant, this matter came before the court sitting

---

[1] Ramirez filed an amended complaint on January 6, 2009, citing multiple causes of action. See ECF No. 8. The parties stipulated to dismiss all but the instant claim. See ECF Nos. 24, 25.

without a jury on June 13, 2011.[2]  After one day of trial, testimony and argument, the receipt by the court of exhibits, post-trial briefs and proposals by the parties, the court makes the following:

**FINDINGS OF FACT**

1.   Plaintiff Marina Ramirez is a resident of Pelican Rapids, Minnesota.  Ramirez cannot speak, read or write English.  Tr. 5-6.[3]  She speaks Spanish, but has limited ability to read or write Spanish.  Id. at 6.  As a young child, she went to school in Mexico for approximately 3 years, but stopped because her family was very poor.  Id. at 6-7.

---

[2] Both parties objected to the admission of certain evidence. The court received all evidence for what it was worth.  "[I]n a nonjury case[,] the court should be slow to exclude evidence challenged under one of the exclusionary rules."  9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2411 (3d ed. 2008); see also Builders Steel Co. v. C.I.R., 179 F.2d 377, 379 (8th Cir. 1950).  "In the trial of a case to the court without a jury, the presumption is that the trial court considered only competent evidence and disregarded all evidence which was incompetent."  Montgomery Ward & Co. v. Steele, 352 F.2d 822, 830 (8th Cir. 1965).  Moreover, "[w]hen the district court is sitting as trier of fact, it has no obligation to draw an inference merely because it is supportable."  33 Federal Procedure: Lawyers Edition § 77:148 (2004).  Instead, the court must "determine which of the witnesses it finds credible, which of the permissible competing inferences it will draw, and whether the party having the burden of proof has persuaded it as fact finder that the requisite facts are proven."  Id.

[3] "Tr." refers to the partial transcript filed on June 14, 2011.  See ECF No. 112.

2. Ramirez's parents always told Ramirez that she was born in the United States. Id. at 10.

3. Ramirez's father told Ramirez's son, Hector, and other family members that Ramirez was born in the United States. Id. at 97-98.

4. The common understanding, or reputation, among Ramirez's family members is that she was born in the United States. Id. at 98.

5. On May 2, 1950, the state of Texas issued a birth certificate (Texas birth certificate) indicating that Ramirez[4] was born in San Benito, Texas on November 22, 1946 to parents Jose Perez and Petra Hernandez. Pl.'s Ex. 1. Jose Perez, Ramirez's father, signed the Texas birth certificate swearing that he had personal knowledge of the facts stated therein and that those facts were true to the best of his knowledge and belief. Id.

6. Ramirez has a certificate of baptism from St. Benedict church in San Benito, Texas, indicating that she was born in San Benito, Texas, on November 22, 1946, and was baptized on February 26, 1950. Pl.'s Ex. 5; Tr. 20. The certificate of baptism is dated September 24, 1975. Pl.'s Ex. 5.

---

[4] The document refers to Ramirez by her maiden name, Marina Perez.

7. Ramirez has seven siblings. Celedoñio,[5] the oldest, was approximately 14 or 15 years older than Ramirez, and Ramirez's parents told her that Celedoñio was born in Vera Cruz, Mexico. Tr. 13-16. Elvira, the second-oldest, was approximately two years older than Ramirez, and Ramirez's parents told Ramirez that Elvira was born in Uriangato, Mexico. Id. at 17.

8. Ramirez is next in the birth order, followed by siblings Maria Esperanza, Jose and Paula. Id. at 18. Ramirez's parents told her that she and these three siblings were born in Texas. Id. at 18-19. Each of these three siblings has a Texas birth certificate issued by the state of Texas on May 2, 1950.[6] Joint Ex. 3, at Ram 45-47.

9. Sometime after Paula was born, Ramirez moved to Mexico with her parents and siblings. Ramirez's two youngest siblings, Alvaro[7] and Florencio, were born in Mexico. Ramirez has no independent recollection of living in the United States as a child, moving to Mexico or the birth of her youngest siblings. Tr. 21-22, 51-52.

---

[5] Celedoñio is a half-brother from Ramirez's mother's previous marriage. Tr. 13, 15. Her other siblings are full-siblings.

[6] The copies of these birth certificates are largely illegible. See Joint Ex. 3, at Ram 45-47. However, the parties submitted these documents as a joint exhibit and neither party disputes that they are authentic copies of Texas birth certificates for Ramirez's siblings Maria Esperanza, Jose and Paula.

[7] The trial transcript refers to "Alvara." The exhibits refers to "Alvaro." See, e.g., Joint Ex. 2, at Ram 69.

10.  On November 28, 1964, Ramirez married Raul Ramirez Diaz in Mexico. Pl.'s Ex. 4. The marriage certificate issued by the State of Guanajuato, Mexico, lists Ramirez's birth place as the United States of America. Id. Ramirez told the official who issued the marriage certificate that she was born in the United States. Tr. 24.

11.  Ramirez has four children named Hector, Artemio,[8] Ana Maria, and Raul. Id. at 4. Ramirez's children were born in Mexico. Id. at 25.

12.  Ramirez's son Hector has a birth certificate registering his birth in Mexico. Raul Ramirez is listed as the father, "originally from: Cupuato." Def.'s Ex. 6. Ramirez is listed as the mother, "originally from: Cuitizillo," where she was raised. Id.; Tr. 71. The document indicates that Ramirez's husband registered Hector, although Ramirez's father-in-law actually did so. Tr. 73. Ramirez was not present at the registration. Id. at 88.

13.  Ramirez's son Artemio has a birth certificate registering his birth in Mexico. Def.'s Ex. 4. Ramirez's husband registered Artemio's birth. Tr. 68. Under "nationality," the document indicates that both Raul Ramirez Diaz, the father, and Ramirez, the

---

[8] The transcript also refers to "Artemo." See, e.g., Tr. 88:19.

mother, are Mexican. Def.'s Ex. 4. Ramirez was not present at the registration. Tr. 88.

   14. Ramirez's son Raul has a birth certificate registering his birth in Mexico. Def.'s Ex. 5. The document is filled out by hand, in cursive handwriting. Id. Ramirez cannot read cursive handwriting and did not fill out the form. Tr. 62. Under nationality, the document indicates that both Raul Ramirez, the father, and Ramirez, the mother, are Mexican. Def.'s Ex. 5. Ramirez does not remember whether she told the official completing the form that she was Mexican, because she had her children with her and was distracted. Tr. 67, 70. Ramirez was present when the document was executed, and signed her name at the bottom of the document. Id. at 64; Def.'s Ex. 5.

   15. Ramirez applied for, and obtained, United States green cards for her children and husband. Tr. 25. To support the applications, Ramirez submitted her marriage certificate, her children's birth certificates, and the Texas birth certificate. Id.

   16. Sometime between 1977 and 1979, after obtaining the green cards, Ramirez moved to the United States with her children and husband. Id. at 27-28.

17.  Ramirez submitted three applications for a United States passport.  Id. at 25.  All three applications were rejected because the Texas birth certificate is not dated within one year of Ramirez's birth.

18.  Ramirez's son, Hector, and Ramirez's friend helped her complete the applications because she could not read them.[9]  Id. at 26.  Ramirez's 2007 passport application indicates that Ramirez was 29 years old when she returned to the United States.  Joint Ex. 2, at Ram 69.

19.  In fact, Ramirez cannot remember how old she was when she returned to the United States.  Tr. 80-81.

20.  The application indicates that Ramirez has five siblings, and does not include Celedoñio or Elvira.  Joint Ex. 2, at Ram 69.  At the time that Ramirez submitted the passport application, both Celedoñio and Elvira were deceased.  Tr. 87.

21.  Ramirez did not read the form before she signed it, thereby certifying to its truth, and submitted it.  Id. at 83-84.

22.  On October 5, 2007, the United States passport agency informed Ramirez that a search of Mexican vital records revealed a birth certificate (Mexico birth certificate) recorded for her on January 6, 1946, in Uriangato, Mexico.  Joint Ex. 2, at Ram 74.

---

[9] Ramirez's son testified that he helped her with only two of the three applications.  Tr. 103:13-17, 105:15-106:06.  In his deposition, he testified that he helped her with all three.  Id. at 105:11-16.

7

23. The Mexico birth certificate correctly lists Ramirez's name, as well as the names of her parents and grandparents, and indicates that Ramirez was born in Mexico on November 22, 1945. Def.'s Exs. 1, 2; Tr. 38-41.

24. The passport agency forwarded the Mexico birth certificate to the Texas Department of Health Services, Vital Statistics Unit. As a result, the Texas state registrar refused to issue a certified copy of the birth certificate to Ramirez. Joint Ex. 3, at Ram 27.

25. Ramirez appealed and, on May 21, 2008, a hearing examiner in Travis County, Texas held a hearing to determine the accuracy of the Texas birth certificate. Id. The hearing examiner considered, among other evidence, the Mexico birth certificate, the certificate of baptism, the marriage certificate and Ramirez's testimony. Id. at Ram 28-29.

26. On July 8, 2008, the hearing examiner found the Texas birth certificate accurate by a preponderance of the evidence, and ordered that the state registrar issue a certified copy of the Texas birth certificate to Ramirez. Id. at Ram 30.

27. The hearing examiner found that Ramirez was the first of seven children, that she and the next three of her siblings were born in the United States, and that the last three of her siblings were born in Mexico. Id. at Ram 28.

28. In fact, excluding her half-brother, Ramirez was the second of seven children, and the oldest sibling plus the two youngest siblings were born in Mexico.  Tr. 78-79.

29. The hearing officer also found that Ramirez's certificate of baptism was dated February 26, 1950.  Joint Ex. 3, at Ram 28-29.

30. In fact, the certificate of baptism is dated September 24, 1975.  Pl.'s Ex. 5.

31. On May 12, 2009, Mexico issued a copy of the Mexico birth certificate with an affixed apostille.[10]  Def.'s Exs. 1, 2; Tr. 38-41.

32. Ramirez had no prior knowledge of the Mexico birth certificate and has no explanation for its existence.  Tr. 31, 41-42.

## CONCLUSIONS OF LAW

1. The court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

2. All persons born in the United States and subject to the jurisdiction thereof are citizens of the United States.  U.S. Const. amend. XIV, § 1; 8 U.S.C. § 1401(a).

3. Any person who claims to be a United States citizen and is denied a "right or privilege ... upon the grounds that he is not

---

[10] The Mexico birth certificate indicates that it was signed by a Mexican official on May 12, 2009. Def.'s Ex. 1, at Ram 01. The apostille is dated May 13, 2009. Id., at Ram 02.

a national of the United States" may sue "for a judgment declaring him to be a national of the United States." 8 U.S.C. § 1503(a).

4.  Ramirez bears the initial and the ultimate burden of proving her citizenship by a preponderance of the evidence. See Liacakos v. Kennedy, 195 F. Supp. 630, 631 (D.D.C. 1961).

5.  The preponderance of the evidence standard is the lowest standard of proof available in the law, see United States v. Sparkman, 500 F.3d 678, 685 (8th Cir. 2007), and requires Ramirez to show that it is more likely than not that she was born in the United States, see 32A C.J.S. § 1628 (2011) ("preponderance of evidence means evidence that is of greater weight, or is more convincing, than that offered in opposition").

6.  The Department of State requires a person applying for a passport to present either primary evidence of birth in the United States, in the form of a contemporaneous birth certificate, or sufficient secondary evidence. See 22 C.F.R. § 51.42. Although Department of State regulations are instructive, the court makes a de novo determination of citizenship. See Vance v. Terrazas, 444 U.S. 252, 256 (U.S. 1980); Rivera v. Albright, No. 99-C-328, 2000 WL 1514075, at *1 (N.D. Ill. Oct. 11, 2000).

7.  "There is no specific list of documents [plaintiff] must use or may use. [Sh]e must simply demonstrate by a preponderance of the evidence that [s]he was born in the United States." Rivera, 2000 WL 1514075, at *1 (internal citation omitted).

8. "An 'apostille' is an international method for verification of foreign documents similar to notarization." Corovic v. Mukasey, 519 F.3d 90, 93 n.2 (2d Cir. 2008).

9. The Mexican birth certificate is admissible as a self-authenticating foreign record. See Fed. R. Civ. P. 44(a)(2)(A)(ii); Fed. R. Evid. 902(3); United States v. Vidrio-Osuna, 198 F. App'x 582, 583 (9th Cir. 2006).

10. A contemporaneous foreign birth record creates a presumption of alienage. See Rivera, 2000 WL 1514075, at *3 (citing Liacakos, 195 F. Supp. at 630).

11. Ramirez has introduced evidence sufficient to overcome the presumption of alienage created by the Mexico birth certificate.

12. Under Texas law, a copy of a birth certificate "that is certified by the state registrar is prima facie evidence of the facts stated in the record." Tex. Health & Safety Code Ann. § 191.052 (2010).

13. Under the Full Faith and Credit statute, the Texas birth certificate "shall have the same full faith and credit in every court and office within the United States" as it would receive in a Texas court. 28 U.S.C. § 1739; see also Mah Toi v. Brownell, 219 F.2d 642, 643 (9th Cir. 1955).[11]

---

[11] The court has already determined that it is not bound by the decision of the Texas proceeding. See ECF No. 86, at 7.
(continued...)

14. Ramirez's testimony that her parents always told her that she was born in the United States is admissible and probative. See Fed. R. Evid. 804(b)(4)(B) (statement concerning birth of another person is not hearsay if the declarant is unavailable and "was related to the other by blood, adoption, or marriage").

15. Ramirez's reputation among her family that she was born in the United States is admissible and probative. See Fed. R. Evid. 803(19); United States v. Jean-Baptiste, 166 F.3d 102, 110 (2d Cir. 1999). "[T]here is a special need for this type of evidence," because, as here, "[o]ther evidence of family matters is frequently unavailable, and it is likely that these matters have been sufficiently inquired about and discussed with persons who have personal knowledge so that a trustworthy consensus has been reached." 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Rules of Evidence for the United States Courts § 803.21[1] (2d ed. 2010).

16. Viewing the evidence as a whole, Ramirez has met her burden to show by a preponderance of the evidence that she was born

---

[11](...continued)
Notwithstanding this determination, however, the court must give the Texas birth certificate the same weight it would receive in a Texas court, and therefore consider the Texas birth certificate prima facie evidence of Ramirez's birth in the United States.

in the United States.[12]  Therefore, Ramirez is entitled to a United States passport.

**ORDER FOR JUDGMENT**

Pursuant to the foregoing Findings of Fact and Conclusions of Law, **IT IS HEREBY ORDERED AND ADJUDGED** pursuant to 8 U.S.C. § 1503(a) that plaintiff Marina Ramirez is a national of the United States, entitled to proof of citizenship in the form of a United States passport.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 18, 2011

s/David S. Doty<br>
David S. Doty, Judge<br>
United States District Court

---

[12] The court has already determined that once a plaintiff establishes a prima facie case, the burden shifts to the defendant. See ECF No. 86, at 6.  The court need not apply the burden-shifting analysis here, however, because the court determines that Ramirez has met her burden to prove by a preponderance of the evidence that she was born in the United States.